UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENYADA L. SMITH,

        Plaintiff,

v.                                                      Case No. 22-cv-1041-bhl

KILOLO KIJAKAZI,

        Defendant.

---

## DECISION AND ORDER

---

        Plaintiff Kenyada L. Smith seeks review of the final decision of the Acting Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. §405(g). For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

        Smith applied for DIB and SSI on January 25, 2019, alleging a disability onset date of February 16, 2018. (ECF No. 11 at 2.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (*Id*.) The ALJ held a hearing and, in a November 17, 2020 decision, found Smith not disabled. (*Id*.) Smith requested review of the ALJ's decision, and, on April 8, 2021, the Appeals Council remanded her claim for a new hearing and decision. (*Id*.) The ALJ then conducted a new hearing and again found Smith not disabled. (*Id*.) Smith requested review of that decision too, but the Appeals Council denied her request. (*Id*.) This appeal followed.

## FACTUAL BACKGROUND

        Smith was born on January 3, 1982, and was thirty-six years old on her alleged disability onset date. (ECF No. 7-3 at 45, 92). In February 2018, she suffered injuries when a motor vehicle ran a stoplight and collided with the bus she was driving. (ECF No. 7-8 at 22-23.) She presented at the emergency room with tenderness to palpation of the left shoulder and limited range of motion, tenderness to palpation of the cervical and lumbar spine and along the paraspinal muscles, tenderness to palpation of the left posterior distal ribs and soreness to palpation over her left hip.

(ECF No. 7-8 at 24-25.) She was ultimately diagnosed with strains of the lumbar region, shoulder, and neck muscle and placed in a shoulder sling. (*Id*. at 22.) In March of 2018, Smith established care with Gregory N. Rocco, M.D., who made referrals to other physicians for second opinions and for functional capacity testing, rheumatology consultation, and neurology consultation. (ECF No. 7-3 at 38-39, 43.) She also underwent both a physical therapy evaluation and resulting physical therapy. (ECF No. 11 at 3-4.) She nevertheless continued to complain of persistent lower back pain and numbness and tingling in her legs. (*Id*. at 6.) Dr. Rocco diagnosed her with depression and she later began treatment with psychiatrist Robert Callaghan, M.D. (ECF No. 7-3 at 41.)

In assessing Smith's claim, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. §§404.1520 and 416.920. The ALJ found Smith had several severe impairments: "dysfunction of the lumbar spine and left sacroiliac joint, status post motor vehicle accident; plantar fasciitis; carpal tunnel syndrome; depression; anxiety; and posttraumatic stress disorder." (ECF No. 7-3 at 36.) The ALJ then determined that Smith had the residual functional capacity (RFC) to perform light work but with limitations that included frequent but not constant handling and fingering with bilateral hands; never climb ladders, ropes and scaffolds; occasionally climb ramps and stairs; balance; stoop; knee[l], crouch and crawl; no exposure to unprotected heights; occasional exposure to vibration and moving mechanical parts; simple, routine and repetitive tasks; simple, work related decisions; no work at production rate pace (e.g. assembly line work) and occasional interactions with coworkers, supervisors and the public. (*Id*. at 37-38.) In crafting the RFC, the ALJ relied on the findings of Rohini Mendonca, M.D. and Larry Kravitz, Psy.D. (ECF No. 7-4 at 29, 31.) Although the ALJ found Smith could not return to her prior work as a bus driver, he concluded she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (ECF No. 7-3 at 45.) Therefore, the ALJ determined that Smith was not disabled. (*Id*. at 46.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). In reviewing the record, the Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Smith challenges two aspects of the ALJ's decision. She claims: (1) the ALJ failed to properly evaluate the medical opinion evidence and failed to properly determine Smith's RFC and (2) the ALJ failed to assess Smith's subjective symptoms. Neither complaint establishes a basis for remand, and the Acting Commissioner's decision will, therefore, be affirmed.

**I. The ALJ Adequately Assessed the Medical Opinion Evidence and Adequately Supported his RFC Determination.**

Smith first challenges the ALJ's evaluation of the medical opinion evidence. On this issue, Smith faces an uphill battle. ALJs are not required to "defer or give any specific evidentiary weight . . . to any medical opinion." 20 C.F.R. §404.1520c(a). Instead, they must analyze opinions based on their persuasive value according to several factors, including, most importantly, supportability and consistency. *Id.* An opinion is more persuasive when supported by relevant objective medical evidence and explanations. *Id.* at (c)(1). Similarly, an opinion is entitled to more weight when consistent with evidence from other sources. *Id.* at (c)(2). An ALJ's assessment will be sustained as long as it is minimally articulated and reasonable, even if another ALJ (or the Court) could have reached a different conclusion. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (courts "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment'") (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering [the regulatory] factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons – a very deferential standard that we have in fact, deemed 'lax.'") (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

### A. The ALJ Properly Considered the Objective Medical Evidence in Evaluating the Medical Opinions.

The record confirms that the ALJ properly considered the objective evidence as part of his analysis of the offered medical opinions. *See* 20 C.F.R. §404.1529(a) (ALJs look to "the extent to which … symptoms can reasonably be accepted as consistent with the objective medical evidence."). The ALJ thoroughly discussed the objective imaging evidence, which was negative for abnormalities. (ECF No. 7-3 at 38-39.) The record confirms that when Smith presented to the emergency room after the accident, the imaging was "unremarkable, including CT scan of her cervical spine, and X-rays of her lumbar spine, left shoulder, and left chest/ribs." (*Id*. at 38 (citing ECF No. 7-8 at 23-33).) On March 2, 2018, Smith established care with Gregory Rocco, M.D., a sports medicine specialist, due to ongoing complaints of pain in her left shoulder and back. (*Id*. at 38.) A subsequent MRI of her cervical and lumbar spine were both negative. (*Id*. at 39 (citing ECF No. 7-8 at 54-59, 72.).) On August 15, 2018, electrodiagnostic studies were negative for "radiculopathy, lumbo-sacral plexopathy, myopathy, entrapment neuropathy, or peripheral polyneuropathy at bilateral lower limbs." (*Id*. at 39 (citing ECF No. 7-8 at 97.).)

Against this objective evidence, the ALJ considered the medical opinions of Smith's treating physicians and the state agency doctors. The ALJ acknowledged that during physical examinations, Dr. Rocco observed palpable neck and lumbar spasms, minimally positive Spurling's maneuver and positive straight leg raising bilaterally. (*Id*. at 38-39.) Dr. Rocco also confirmed, however, that Smith's spine was non-tender and neurological findings were intact and thus continued her "conservative medication regimen and physical therapy." (*Id*. at 39.) Dr. Rocco referred Smith for pain consultation with Gregory Crovetti, M.D. (ECF No. 7-3 at 39.) Dr. Crovetti noted paraspinal spasms along the thoracic and lumbar spine bilaterally and pain with palpation, as well as pain at the SI joints and L5-S1 region, but negative straight leg raising bilaterally and intact neurological findings. (ECF No. 7-9 at 243.) He found no significant disc bulging or canal stenosis. (*Id*. at 244.) On August 16, 2018, Dr. Crovetti noted that the physical examination was remarkable for positive Waddell's signed but also noted "there may be some psychosocial component to her pain." (*Id*. at 182-84.) Dr. Crovetti referred Smith for functional capacity testing, but it does not appear that this was done. (ECF No. 7-3 at 39.) Dr. Rocco also referred Smith to Michael Didinsky, D.O. for a second opinion regarding her pain symptoms. (*Id*.) Dr. Didinsky noted non-antalgic gait, full strength, negative Waddell's sign, intact sensation and reflexes, ability to tandem and toe to heel walk, ability to squat and rise, and full and painless

lumbar range of movement. (ECF No. 7-9 at 150-52.) He also stated that he was "having a hard time explaining [claimant's] symptoms" as "her main complaint is sciatic type symptoms to the lower extremity" and he observed "no compression of the lumbar spine." (*Id*. at 152.)

The ALJ's evaluation of the medical opinion evidence is explained in the record. (ECF No. 7-3 at 44 (finding the medical opinions of Drs. Rocco, Callaghan, Ryser and Nichols unpersuasive).) The ALJ found Dr. Rocco's May 2019 and March 2021 opinions to be unpersuasive. (*Id*.) In the May 2019 opinion, Dr. Rocco opined that Smith was limited to less than sedentary work and noted that MRIs of the L/S spine, neck and brain, X-rays of the left knee and hip, and blood work supported the diagnoses of polyneuropathy, neck pain, back pain, and arthralgia. (ECF No. 7-8 at 118-122.) As the ALJ correctly noted, however, the "imaging was actually negative for any abnormality" and, therefore, did not support the diagnoses. (ECF No. 7-3 at 44.) Moreover, physical examination was unremarkable "other than tenderness in the lower lumbar with palpable spasms, and positive straight leg exam bilaterally." (ECF No. 7-3 at 40 (citing ECF No. 7-10 at 222, 228, 233, 238.).) As for the March 2021 opinion, Dr. Rocco cited chronic pain, anxiety, and PTSD as claimant's pain-producing impairments. (ECF No. 7-10 at 240.) When asked to list clinical and laboratory findings that supported the diagnoses, Dr. Rocco chose to leave this portion of the form blank. (*Id*.) Dr. Rocco also noted he believed the claimant to have physical symptoms greater than what would be expected for the known physiological mechanisms, disproportionate and persistent thoughts about the seriousness of her symptoms, persistent high levels of anxiety about her symptoms and excessive time and energy devoted to these symptoms. (*Id*. at 243.) Dr. Rocco did not answer whether claimant was a malingerer. (*Id*. at 240.) The ALJ reasonably found this opinion to be "unhelpful." (ECF No. 7-3 at 44.) The ALJ further found that Dr. Rocco's less than sedentary restrictions were not supported by the physical examination findings. (ECF No. 7-3 at 44.)

In sum, the ALJ's evaluation of Dr. Rocco's opinions satisfied the requirement that the ALJ "minimally articulate" his reasons for discounting the opinion and this Court will defer to his judgment. *See Skarbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally articulate[s] his reasons for crediting or rejecting evidence of disability.") (internal quotations and citations omitted).

### B. The ALJ Reasonably Determined That Smith Could Perform Light Work with Additional Restrictions.

In fashioning the RFC, the ALJ restricted Smith to the exertional requirements of light work: lifting/carrying 20 pounds occasionally and 10 pounds frequently; frequent fingering and handling objects; never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasional exposure to vibration and moving mechanical parts; and not exposure to unprotected heights. (ECF No. 7-3 at 37.)

In arriving at these restrictions, the ALJ addressed the administrative medical findings. Jeffrey Nesta, M.D. found that despite claimant's reports of pain, she had no objective findings supporting any medically determinable impairment and was not disabled. (ECF No. 7-4 at 7-8.) Rohini Mendonca, M.D. found that claimant could lift/carry 50 pounds occasionally and 25 pounds frequently, and frequently climb ramps and stairs and frequently balance, stoop, crouch and crawl. (*Id*. at 28-29.) The ALJ did not adopt either doctor's critiques of Smith's claims in full. He deemed Dr. Nesta's finding of no medically determinable impairment not persuasive and Dr. Mendonca's finding that Smith could perform medium work not fully persuasive. (ECF No. 7-3 at 44.) The ALJ's restrictions were thus more favorable to Smith than Drs. Nesta's and Mendonca's prior administrative medical findings.

The ALJ also relied on the restriction opinions of Larry Kravitz, Psy.D. (ECF No. 7-3 at 44 (citing ECF No. 7-4 at 30-31.).) Dr. Kravitz completed a Mental Residual Functional Capacity Assessment and assessed Smith as moderately limited in sustained concentration and persistence, social interaction, and adaptation. Dr. Kavitz further opined that Smith "would only be capable of managing simple, routine work tasks mentally." (ECF No. 7-4 at 31.) Dr. Kravitz explained that Smith's symptoms would interfere with tasks that were not simple and repetitive, and that Smith would "do best within a work environment which had only straightforward and undemanding social requirements," and with "ordinary levels of work stress and limited changes in day-to-day work routine." (ECF No. 7-4 at 30-31.) In contrast, the ALJ found the opinions of Robert Callaghan, M.D., David Nichols, Ph.D., and Christina Ryser, Ph.D. to be unpersuasive because the opinions were inconsistent with objective treatment notes (Callaghan), failed to contain objective information about Smith's functioning (Nichols) and extreme and inconsistent with the record (Ryser). (ECF No. 7-3 at 44.) The ALJ noted that Smith recently began treatment with Dr. Callaghan "who observed her to unfailingly have a euthymic mood and normal affect." (ECF No.

7-3 at 43.) Dr. Callaghan's notes from September 2020 through August 2021 documented these observations as well as normal thought content and thought processes. (*Id*. at 42.)

The RFC fashioned by the ALJ accommodated Dr. Kravitz's restrictions by limiting Smith to performing simple, routine, and repetitive tasks but not at a production rate pace (*e.g*., assembly line work); making simple, work-related decisions; and occasionally interacting with co-workers, supervisors and the public. (ECF No. 7-3 at 37-38.) Smith argues that the ALJ failed to explain or cite to any evidence indicating she can perform light exertional work. (ECF No. 11 at 29.) In support of this criticism, Smith cites two unpublished Seventh Circuit decisions, *Eakin v. Astrue*, 432 F. App'x 607 (7th Cir. 2011) and *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010). Neither case helps her.

Contrary to Smith's suggestion, *Suide* does not require an ALJ to rely on a specific medical opinion when crafting the RFC. The issue in *Suide* was that an ALJ had discredited the RFC opinions of *both* the state agency physician *and* the claimant's treating physician. *Id.* at 688. The ALJ in *Suide* also did not discuss a third medical opinion but the opinion did not include a functional assessment of the claimant's abilities. *Id.* at 690. While the parties argued about the ALJ's rejection of the treating physician's opinion, the Seventh Circuit remanded not because of the ALJ's evaluation of the treating physician, but because of "the evidentiary deficit left by the ALJ's rejection of his reports." *Id.* at 689-90. The Court of Appeals explained, "[t]he rest of the record simply [did] not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* at 690. Nothing in *Suide* created a bright-line rule that rejection of physician opinion evidence automatically means the ALJ's decision is unsupported by substantial evidence. Under *Suide*, remand is required where the ALJ's rejection of the physician's medical opinion leaves the RFC determination untethered to *any* record evidence.

In *Eakin*, the ALJ determined the claimant could perform sedentary work but failed to point to any evidence that supported the RFC. 432 F. App'x at 611. The ALJ stated that that the record "does not provide a basis for finding limitations greater than those determined in this decision." *Id*. The Seventh Circuit found this statement to be "terse" and "too perfunctory to permit meaningful appellate review" and remanded with the instructions that the ALJ should substantiate how she arrived her RFC determinations. *Id*. at 611, 613.

The ALJ's RFC determination here does not run afoul of either of these cases. While the ALJ did not accept the RFC opinions of Smith's treating physician or the restrictions of Dr. Nesta or Dr. Mendonca in total, he was not required to. An ALJ is not "required to rely entirely on a particular physician's opinion or choose between the opinions." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). And, while an ALJ is certainly prohibited from 'playing doctor' by filling in evidentiary gaps in the record with her own lay opinion, *see Herren v. Saul*, No. 20-cv-156, 2021 WL 1192394, at *5 (E.D. Wis. Mar. 30, 2021), that is not what happened here. In this case, the ALJ partially relied on agency consultants' opinions but incorporated additional limitations. This was entirely proper. The ALJ also considered Smith's conservative medication regimen, physical therapy, and steroid injections, which were not severe enough to support the less than sedentary level of activity opined by Dr. Rocco and inconsistent with other providers who found normal neurological functioning. The ALJ reasonably noted that Smith did not follow up with referrals from medical providers for functional capacity testing, rheumatology consultation, and neurology consultation. (ECF No. 7-3 at 43.) The ALJ simply gave less weight to opinions that were heavily dependent on Smith's subjective complaints. The Seventh Circuit has confirmed that an ALJ may "give less weight to an opinion that appears to rely heavily on the claimant's subjective complaints, even if the source of that opinion had examined the claimant." *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013); *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016) (affirming ALJ that discounted a medical opinion "based on subjective reports . . . rather than objective measurements").

Smith argues that it was improper for the ALJ to favor the opinion of Dr. Kravitz instead of Smith's treating physician or examining specialists. (ECF No. 11 at 32.) Smith essentially invites this Court to reweigh the evidence, which the Court is specifically prohibited from doing. *See Estok*, 152 F.3d at 638. Smith also appears to contend that Dr. Kravitz engaged in unethical conduct by offering an opinion without conducting an examination of the claimant. (ECF No. 11 at 33.) Smith's accusation of unethical conduct is without merit as state-agency psychologists are tasked with reviewing records in Social Security cases and based upon those records making functional assessments. *See* 20 C.F.R. §404.1513a(b)(1) ("Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

The ALJ properly accounted for all limitations supported by the medical evidence of record and reasonably concluded that Smith could perform light work with numerous additional limitations to account for her mental and physical impairments. In doing so, the ALJ's adopted the findings of Dr. Kravitz and crafted an RFC that incorporated limitations that were at least as restrictive as Drs. Nesta and Mendonca. The requirement that an ALJ "consider[] all limitations supported by the record evidence" and "tie[] the record evidence to the limitations included in the RFC finding" does not require the ALJ to match specific RFC finding, such as to light work, to a medical opinion. *See Vang v. Saul*, 805 F. App'x 398, 401-02 (7th Cir. 2020) (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019)). The RFC is supported by substantial evidence will not be disturbed by the Court.

## II. The ALJ Properly Evaluated Claimant's Subjective Symptoms.

Smith also claims the ALJ committed error in failing to credit her subjective complaints. The record does not show error, however. When determining the existence or extent of a disability, Social Security Ruling (SSR) 16-3p requires ALJs to consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017.) This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If there is such an impairment, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

The ALJ found that Smith's underlying impairments could be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (ECF No. 7-3 at 38.) The ALJ considered the objective evidence along with a number of other factors named in the regulations, 404.1529(c)(2)-(4), such as Smith's course of treatment and daily activities. The ALJ explained that while Smith reported chronic and severe pain,

objective medical evidence did not establish any abnormalities or a clear etiology for Smith's reports of significant and ongoing symptoms. (ECF No. 7-3 at 43.)

To the extent Smith contends an ALJ can never consider the lack of objective evidence as a basis for rejecting a claimant's subject complaints, she misstates the law. Regulations, including 20 C.F.R. §404.1529(c)(2) and (4), *require* an ALJ to consider the objective medical evidence. While an ALJ cannot deny disability "solely because the available objective medical evidence does not substantiate [the claimant's] statements," 20 C.F.R. §404.1529(c)(2), it is entirely proper—it is indeed required—that the ALJ consider objective evidence in evaluating those claims. Here, the ALJ here properly considered the objective evidence along with a number of other factors named in the regulations, 404.1529(c)(2)-(4), such as Smith's course of treatment and observations during physical examinations. As noted by the ALJ, Smith's health care providers "repeatedly indicate[d] that they do not fully understand what would be causing the level of pain she alleged." (ECF No. 7-3 at 43.)

An ALJ is specifically tasked with considering whether a claimant's symptoms are consistent with the objective medical evidence. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022) (citing 42 U.S.C. §423(d)(5)(A)); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (where ALJ was "entitled to find that the plaintiff, although she may well suffer from chronic pain, is capable of full-time employment and therefore not totally disabled"). As the Seventh Circuit has noted, pain is subjective, and when fashioning an RFC to account for it, "[a]lmost any conclusion an ALJ reaches … may be inconsistent with some evidence in the record." *Kolar v. Berryhill*, 695 F. App'x 161, 162 (7th Cir. 2017). A credibility finding is not "patently wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). Here, the ALJ relied on the objective medical evidence which was negative for abnormalities and the observations of treating physicians that Smith's physical symptoms were greater than what would be expected. Court review is deferential and a reviewing court "will not reweigh the evidence or substitute [the court's] judgment for that of the ALJ." *L.D.R. v. Berryhill*, 920 F.3d 1147, 1151-52 (7th Cir. 2019) (quoting *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017)); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of [claimant's] testimony, we will

not reweigh evidence or substitute our judgment for the ALJ's."). Smith has not demonstrated that the ALJ's evaluation of her subjective complaints is in error.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 12, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge